UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61007-CIV-COHN/SELTZER

ACCESS 4 ALL, INC., a Florida not for
profit corporation and JOE HOUSTON,
individually,

             Plaintiffs,

vs.

BAMCO VI, INC., a Florida profit corporation
d/b/a CITGO GAS,

             Defendant.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Summary Judgment

[DE 19] ("Plaintiffs' Motion") and Defendant's Motion for Summary Judgment [DE 21]

("Defendant's Motion") (collectively "Motions for Summary Judgment").  The Court has

carefully considered the Motions for Summary Judgment, all of the parties'

submissions, and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Joe Houston ("Houston"), a Pompano Beach, Florida resident, was

paralyzed as a result of an automobile accident.  Statement of Joe Houston Made

Pursuant to 28 U.S.C. § 1976 [DE 19-2] ("Houston Aff.") ¶ 3.  Houston serves as the

vice president of Access 4 All, Inc. ("Access 4 All"), a non-profit corporation which

strives to ensure that places of public accommodation are accessible to the disabled.

Id. ¶ 4.  On May 6, 2011, Houston and Access 4 All (collectively "Plaintiffs") filed suit

against Defendant Bamco VI, Inc. ("Defendant") pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA"), seeking declaratory and injunctive relief after Houston allegedly encountered architectural barriers to access at a gasoline station Defendant operated.  Complaint [DE 1] ¶¶ 4-5.  Specifically, Plaintiffs allege that Houston encountered violations of the ADA at Defendant's gas station including an insufficient access aisle in the parking and loading zone and numerous violations in the restrooms.  Id. ¶ 10.

After the Complaint was filed, Defendant retained William Norkunas ("Norkunas"), president of Disability Assistance, Inc., to inspect its gas station.  Affidavit of William Norkunas [DE 25] ("Norkunas Aff.") ¶¶ 1, 4.  During a May 17, 2011 inspection, Norkunas identified a number of "readily achievable" modifications which should be done at the gas station to make it ADA compliant.  Id. ¶ 5.  According to Norkunas, Defendant implemented all these modifications which he personally verified at a July 8, 2011 re-inspection of the facility.  Id. ¶ 7.  On October 20, 2011, Plaintiffs had Peter Lowell ("Lowell") inspect the gasoline station to determine its ADA compliance.  Plaintiffs' Motion ¶ 7.  Based on Lowell's inspection, Plaintiffs contend that the gas station is not ADA compliant and they are entitled to an injunction which requires the Defendant to comply with the ADA.  Defendant, on the other hand, argues that all readily achievable ADA modifications have been made to the gas station and Plaintiffs lack standing to pursue their claims.  Plaintiffs and Defendant have now filed cross motions for summary judgment.

II. DISCUSSION

**A. Legal Standard For Summary Judgment.**

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is

3

merely colorable, or is not significantly probative, summary judgment may be granted."
Anderson, 477 U.S. at 249-50 (citations omitted).

### B. Legal Standard for Americans with Disabilities Act Claims.

Title III of the Americans with Disabilities Act provides that "[n]o individual shall
be discriminated against on the basis of disability in the full and equal enjoyment of the
goods, services, facilities, privileges, advantages, or accommodations of any place of
public accommodation by any person who owns, leases (or leases to), or operates a
place of public accommodation." 42 U.S.C. § 12182(a). To make out a prima facie
ADA discrimination case, Plaintiffs must establish that (1) Houston is disabled; (2) that
the gas station is a place of public accommodation; and (3) that Houston was denied
full and equal treatment because of his disability. See Access Now, Inc. v. S. Fla.
Stadium Corp., 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001). Here, there is no dispute
that Houston is disabled or that the gas station is a place of public accommodation.
Memorandum of Law in Support of Defendant's Motion for Summary Judgment [DE 23-
1] ("Defendant's Mem.") at 4; Defendant's Motion ¶ 1; Memorandum of Law in Support
of Plaintiffs' Motion for Summary Judgment [DE 19-1] ("Plaintiffs' Mem.") at 6.

Discrimination under the ADA includes "a private entity's 'failure to remove
architectural barriers . . . in existing facilities . . . where such removal is readily
achievable." S. Fla. Stadium Corp., 161 F. Supp. 2d at 1362 (quoting 42 U.S.C. §
12182(b)(2)(A)(iv)). If a defendant is found to violate the ADA, a court may grant
injunctive relief, including "an order to alter facilities to make such facilities readily
accessible to and usable by individuals with disabilities." 28 U.S.C. § 12188(a)(2).
When a structure was in existence prior to the enactment of the ADA, however, the

4

ADA requires "only *reasonable* modification and *readily achievable* barrier removals or alternative methods."  S. Fla. Stadium Corp., 161 F. Supp. 2d at 1362 (internal citations and quotations omitted) (emphasis in original).  Because Defendant's gasoline station existed prior to January 26, 1992, the issue presented here is whether Defendant has removed all existing architectural barriers whose modification is readily achievable.  Plaintiffs' Motion ¶ 13; Defendant's Motion ¶ 1.

## C. Plaintiffs Lack Standing to Maintain ADA Claims Not Alleged in the Complaint.

Defendant challenges Plaintiffs' standing to bring this lawsuit.  Defendant's Mem. at 6.  Defendant contends that Plaintiffs only have standing to raise ADA violations identified at the time their Complaint was filed.  Id.  Defendant also argues that given Houston's extensive litigation history, he has failed to demonstrate a present intent to return to the property.  Id. at 9.  Plaintiffs dispute this, arguing that they are entitled to injunctive relief "with respect to all violations, regardless of whether he actually encountered them, knew of them, or named them in his complaint.  Plaintiff's Response to Defendant's Motion to Strike [DE 28] ¶ 8.  For the reasons discussed below, the Court finds that Plaintiffs lack standing to bring claims not alleged in the Complaint.

To establish constitutional standing to bring a lawsuit, a plaintiff must demonstrate that (1) he suffered an injury in fact; (2) the injury was causally connected to the defendant's action; and (3) the injury will be redressed by a judgment in the plaintiff's favor.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (applying Lujan standing test to ADA case).  In addition, "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely

5

conjectural or hypothetical—threat of future injury." <u>Wooden v. Bd. of Regents of Univ.</u>
<u>Sys. of Ga.</u>, 247 F.3d 1262, 1284 (11th Cir. 2001); <u>Shotz</u>, 256 F.3d at 1081 (affirming
district court's dismissal of ADA claim for plaintiff's failure to allege real and immediate
threat of future discrimination).

Defendant argues that Plaintiffs lack standing because Houston is a serial
plaintiff and has no present intent to return to the property.  See Defendant's Mem. at 9.
Plaintiffs contend that they have demonstrated an injury in fact because Houston would
return to the property but for its ADA non-compliance.  Plaintiffs' Mem. at 8.  Here,
Houston submitted an affidavit with his motion for summary judgment where he states
that he would return to the gas station if he could be assured of full access.  Houston
Aff. ¶ 7.  Given that Houston lives in Pompano Beach and has averred that he would
return to the gas station located in Hollywood if it complied with the ADA, the Court
declines to find that Plaintiffs have failed to demonstrate a real and immediate threat of
future discrimination at this time. See S. Fla. Stadium Corp., 161 F. Supp. 2d at 1365
(finding that plaintiff's history of attendance of game at stadium and contention  that he
intended to return to the stadium in the future were sufficient to establish standing to
seek relief).

However, Houston's entry into Defendant's gas station "does not automatically
confer upon him a presumption that he was injured by any and all architectural barriers
therein." <u>S. Fla. Stadium Corp.</u>, 161 F. Supp. 2d at 1365.  Rather, "his entitlement to
relief depends on his showing that he was in fact injured, or subject to discrimination, as
a result of the alleged violations." <u>Id.</u>  As the court held in <u>South Florida Stadium</u>, a
plaintiff only has standing to seek relief for ADA violations "which affect his specific

disability, and that he personally encountered or about which he had actual notice" at

the time the complaint was filed.  161 F. Supp. 2d at 1365; see also Norkunas v.

Seahorse NB, LLC, No. 11–12402, 2011 WL 5041705, at *2 (11th Cir. Oct. 25, 2011)

(finding that plaintiff lacked standing to bring claims regarding motel's designated

accessible rooms because he failed to request accessible room and thus did not

experience discrimination related to the  accessible room); Harty v. SRA/Palm Trails

Plaza, LLC, 755 F. Supp. 2d. 1215, 1217 (S.D. Fla. 2010) (limiting Rule 34 inspection of

defendant's property to only the specific barriers to access alleged in the complaint);

Macort v. Goodwill Indus.-Manasota, Inc., 220 F.R.D. 377, 379 (M.D. Fla. 2003) (same);

Resnick v. Magical Cruise Co., Ltd., 148 F. Supp. 2d 1298, 1301-02 (M.D. Fla. 2001)

(finding that review of cruise company website was insufficient to confer standing on

plaintiffs to bring suit for alleged ADA violations).

    Plaintiffs' reliance on cases decided in other circuits to support their position that

they have standing to complain about *any* ADA violations detected at the gasoline

station is misplaced.[1]  Precedent from this district is clear that Plaintiffs "do not have

standing to complain about alleged barriers which they were unaware of at the filing of

their complaint."  Brother v. CPL Invs., Inc., 317 F. Supp. 2d 1358, 1368 (S.D. Fla.

2004).  Here, the Complaint and Houston's affidavit allege that during his visit to

---

[1]     Some of the cases cited by Plaintiffs do not even support their position.
Doran v. 7-Eleven, Inc., 506 F.3d 1191 (9th Cir. 2007), for example, was distinguished
by Ariz. ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 548 F. Supp. 2d 723
(D. Ariz. 2008), on the grounds that Doran hinged on the court's concern that the
plaintiff would be required to bring piecemeal litigation to access the same facility when
the barriers to access were so great that plaintiff could not even get inside the building.
Harkins Amusement Enters., Inc., 548 F. Supp. 2d at 727 n.5.

Defendant's gas station, Houston encountered only insufficient access aisles in the parking and loading zone and numerous violations in the restrooms.  Complaint ¶ 10; Houston Aff. ¶ 5.  Thus, Plaintiffs have standing related only to the violations alleged in the Complaint or of which Houston had actual knowledge at the time of filing.[2]

Although Plaintiffs' expert identified four alleged ADA violations he encountered at Defendant's gas station: (1) a self-closing valve in the bathroom which did not stay on for the required 10 seconds; (2) a cross slope on the entrance ramp which measured 3.8% and on the access aisle which measured 3.1%; (3) a temporary display blocking the accessible route; and (4) the failure to provide an accessible route from the building to the sidewalk and public transportation stops, Expert Report of The Compliance Group Report [DE 19-4] ("Lowell Report"), only the issue related to the cross slopes is alleged in the Complaint.  Complaint ¶ 10(a).  Nonetheless, in his affidavit, Houston states that he has reviewed Lowell's report and actually encountered two of the additional ADA violations identified by Lowell, namely a temporary display blocking the accessible route and the failure to provide an accessible route to the building from the sidewalk.  Houston Aff. ¶ 6; Lowell Report at 2.  Although the Complaint states that it does not contain an exhaustive list of the ADA violations encountered at Defendant's gasoline station, at no point did Plaintiffs seek to amend the Complaint to allege these additional ADA violations.  Thus, because ADA violations related to the display blocking the accessible route and the failure to provide an accessible route to the building from the sidewalk were not alleged at the time of filing

---

[2]     Because Houston lacks standing to bring these additional claims, Access 4 All also lacks standing.  S. Fla. Stadium Corp., 161 F. Supp. 2d at 1366 n.18.

the Complaint, Plaintiffs lack standing to bring them.[3]  See S. Fla. Stadium Corp., 161

F. Supp. 2d at 1366 n.16.

### D. Summary Judgment is Warranted for Defendant on the Majority of Plaintiffs' Claims.

Defendant also argues that because it has made all readily achievable

modifications to the gas station, the injunctive relief Plaintiffs seek is now moot.

Defendant's Mem. at 9.  In opposition, Plaintiffs contend that their claims are not moot

because "'a defendant's voluntary cessation of a challenged practice does not deprive a

federal court of its power to determine the legality of the practice.'"  Plaintiffs' Response

to Defendant's Motion for Summary Judgment [DE 33] ("Plaintiffs' Response") at 2

(quoting Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1183 (11th Cir. 2007)).

Defendant relies upon its expert, Norkunas, to support its argument that

Plaintiffs' claims are moot.  Defendant's Mem. At 9.  Norkunas states that when he re-

examined the gas station on July 8, 2011, he observed that all readily achievable

modifications to the gas station had been made.  Norkunas Aff. ¶ 7.  Plaintiffs concede

that Defendant has made some modifications to the property, but contest that all readily

achievable modifications have been made because their expert, Lowell, found multiple

ADA violations when he inspected the property on October 20, 2011, including a faucet

that did not stay on for a minimum of 10 seconds and and an obstructed access aisle.

Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for

Summary Judgment [DE 38] ("Plaintiffs' Reply") ¶¶ 5-7.  Relying upon Sheely v. MRI

---

[3]      Houston concedes that he did not encounter a bathroom faucet that did not stay on for 10 seconds or more.  Houston Aff. ¶ 6.  Thus, this issue also is not properly before the Court.

Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007), Plaintiffs contend that "[a]bsent an injunction, there is no reason to believe that Defendant will keep the aisles clear in the future, maintain the faucet, or the automatic door opener, or even replace the 'Assistance Available Upon Requests' signs should one fall off."  Id. ¶ 8; Plaintiffs' Response ¶ 2.

Plaintiffs' reliance upon Sheely is misplaced.  In Sheely, the Eleventh Circuit addressed the issue of whether a defendant's voluntary cessation of a practice which violated the ADA mooted a plaintiff's claim for injunctive relief.  Sheely, 505 F.3d at 1181.  Specifically, the plaintiff and her seeing eye dog were denied access to an MRI room where her minor son was undergoing a procedure.  Id. at 1178.  After months of discovery, the defendant adopted a policy which permitted service animals access to all public areas, with certain limited restrictions.  Id. at 1181.  The Eleventh Circuit found that this policy change did not moot plaintiff's claim because it was unclear whether the defendant had changed its policy merely to deprive the court of jurisdiction.  Id. at 1188. Thus, the "stringent" standard the Eleventh Circuit articulated for mootness in Sheely was applied to discriminatory conduct rather than the architectural modifications at issue here.

Assuming Sheely applies to the instant case, it does not preclude this Court's finding that Plaintiffs' claims are moot.  To determine whether a defendant's voluntary cessation of an offending practice has mooted a case, a court looks to: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in

10

ceasing the conduct, the defendant has acknowledged liability."  Sheely, 505 F.3d at 1184.

Here, there is nothing in the record to suggest that Defendant's  ADA non-compliance was a continuing and deliberate practice.  Rather, the record reflects that in May 2011, the same month the lawsuit was filed, Defendant retained an ADA expert to inspect the property.  Norkunas Aff. ¶ 4.  That inspection took place on May 17, 2011, only 11 days after the Complaint was filed.[4]  Id. ¶ 5.  The readily achievable modifications identified in this inspection were fully implemented and confirmed during a July 8, 2011 re-inspection.  Id. ¶ 7.  Thus, even if the repairs were motivated by the pending lawsuit, the record reflects that Defendant acted promptly with a genuine desire to comply with the law.  See Nat'l Alliance for Accessibility, Inc. v. Walgreen Co., No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011).  Although the record before the Court does not reflect an explicit omission of liability by the Defendant, Defendant's actions reflect that it has taken full responsibility for ADA violations at its property and has acted promptly to correct them.  See id.; Affidavit of Angel T. Franco [DE 24] ("Franco Aff.") ¶¶ 3-5 (noting that the ADA compliance expert Defendant retained advised Defendant of readily achievable modifications that should be performed at the gasoline station and Defendant promptly undertook the modifications).[5]

_____

[4]      This is even more impressive given that Defendant was served with the Complaint on May 10, 2011.  See DE 8 ¶ 1.

[5]      Defendant's intent to bring its property into compliance with the ADA is further evidenced by its actions after it belatedly received the report of Plaintiffs' expert, Lowell.  Defendant adjusted the self-closing valve on the restroom sink to ensure that

Moreover, federal courts have found ADA claims moot when "the alleged discrimination cannot reasonably be expected to recur because 'structural modifications are unlikely to be altered in the future.'" Nat'l Alliance for Accessibility, Inc., 2011 WL 5975809, at *3 (quoting Sharp v. Rosa Mexican, D.C., LLC, 496 F. Supp. 2d 93, 99 (D.D.C. 2007)); see also Kallen v. J.R. Eight, Inc., 775 F. Supp. 2d. 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone.") Thus, the Court may properly grant summary judgment on any claim that is moot based on Defendant's implementation of permanent, structural modifications.

As discussed above, Plaintiffs are limited to those ADA violations actually alleged in the Complaint.[6]  Because this ADA case involves an existing facility, Plaintiffs have the initial burden of production to show that: (1) an architectural barrier exists; and (2) that the proposed method of architectural removal is readily achievable.  Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273 (11th Cir. 2006).  If Plaintiffs meet this burden, the burden shifts to Defendant to establish that removal of the barrier

---

its faucet stayed on for 10 seconds or longer.  Franco Aff. ¶ 7; Norkunas Aff. ¶ 9. Additionally, even though Norkunas did not find any deficiency in the cross slope leading into the store entrance, Norkunas Aff. ¶ 10, Defendant retained both a contractor and a surveyor to measure the cross slope and confirm that it complied with ADA guidelines.  Affidavit of Robert J. Loucks [DE 31] ¶ 3; Affidavit of Brent A. Spencer [DE 32].

[6]    The ADA violations involving the restroom faucet, obstruction in the access aisle, and the failure to provide an accessible route from the building to the sidewalk and public transportation stops identified by Plaintiffs' expert were not alleged in the Complaint and thus are not properly before the Court.

is not readily achievable. [7] Id.  Accordingly, the Court will individually address each ADA violation alleged in the Complaint to determine whether either party is entitled to summary judgment.

First, Plaintiffs allege that Defendant's facility has failed to provide a sufficient access aisle in violation of section 4.6.6 of the ADA Standards for Accessible Design ("ADAAG").  Complaint ¶ 10(a).[8]  Defendant contends that the gas station has an accessible parking space and access to its front entrance door.  Defendant's Concise Statement of Material Facts [DE 22] ¶ 2.  Plaintiffs argue that issues of disputed material fact exist regarding improper cross slopes documented by their expert Lowell which precludes summary judgment for either party.  Plaintiffs' Response ¶¶ 11-12.[9] According to Defendant's expert, Defendant restriped and repaved the handicapped

---

[7]      The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Factors to evaluate to determine whether removal of a barrier is readily achievable include: (1) the nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of the covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.  Id.

[8]      ADAAG § 4.6.6 provides that "[p]assenger loading zones shall provide an access aisle at least 60 in (1525 mm) wide and 20 ft (240 in)(6100 mm) long adjacent and parallel to the vehicle pull-up space (see Fig. 10). If there are curbs between the access aisle and the vehicle pull-up space, then a curb ramp complying with 4.7 shall be provided. Vehicle standing spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions."

[9]      This position is inconsistent with Plaintiffs' motion for summary judgment which contends that Plaintiffs are entitled to summary judgment on all of their claims. See generally Plaintiffs' Mem.

parking space to meet the requirements of ADAAG.  Norkunas Report [DE 25-2] at 4.

Furthermore, Norkunas could not observe any cross slope in excess of the ADAAG.

Norkunas Aff. ¶ 10.  Two additional professionals retained by Defendant also failed to

discern a slope in excess of the ADAAG.  Affidavit of Robert J. Loucks ¶ 3; Affidavit of

Brent A. Spencer.  Plaintiff's expert, however, documented cross slopes at an

impermissible 3.8% and 3.1% for the entrance ramp and access aisle, respectively.

Lowell Report at 2.  He estimates that it would cost $2,500 to bring these cross slopes

into ADA compliance and avers that this is readily achievable.  Id.; Statement of Peter

Lowell Pursuant to 28 U.S.C. 1746 [DE 37-1] ¶ 3.  Lowell also contends that even if

some portions of the entrance ramp or access aisle measure 2% or less, they would still

violate the ADA which requires that the cross slopes be less than 2% everywhere.

Statement of Peter Lowell Pursuant to 28 U.S.C. 1746, submitted in support of

Plaintiffs' Response [DE 33-1] ¶ 6.   Based on the divergent measurements presented

by the parties' respective experts, the Court finds that a disputed issue of material fact

exists as to whether the cross slopes comply with the ADA, precluding summary

judgment for either party on this issue.

Second, Plaintiffs allege that the facility has failed to provide required grab bars

in the restroom in violation of sections 4.17.6 and 4.16.4 of the ADAAG.  Complaint ¶

10(b).  Norkunas' expert report provides photographs of the restroom which indicates

the presence of grab bars.  Norkunas Report at 10.  Plaintiffs have not provided any

evidence to rebut Defendant's contention that this ADA violation has been remedied via

this permanent architectural modification.  Access 4 All v. Oak Spring Inc., No.

504CV75OCGRJ, 2005 WL1212663, at *7 (M.D. Fla.  May 20, 2005) (finding that

defendant was entitled to summary judgment when plaintiffs failed to present evidence of a disputed issue of material fact to be tried in the case).  Plaintiff's expert Lowell inspected the facility and did not note lack of grab bars as an ADA violation.  <u>See</u> Lowell Report.  Accordingly, summary judgment on this claim is proper for Defendant because it is moot.

Third, Plaintiffs contend that the restrooms fail to comply with reach limits imposed by sections 4.2.5. and 4.2.6 of the ADAAG.  Complaint ¶ 10(c).  Plaintiffs have provided zero support other than the bare allegations in the Complaint to support this violation of the ADA.  The Houston affidavit, for example, does not even mention reach limits.  Houston Aff. ¶ 5.  Nor does the Lowell report indicate any issue with reach limits. <u>See</u> Lowell Report.  Thus, the contention of Defendant's expert that all readily achievable ADA modifications have been made is unrebutted and summary judgment is proper for Defendant on this claim.  <u>See</u> Norkunas Aff. ¶ 7.

In their fourth and fifth claims, Plaintiffs allege that the facility fails to provide protective features in the restrooms and insufficient access to all essential parts of the restroom, in violation of sections 4.19.4 and 4.16.5 of the ADAAG.  Complaint ¶¶ 10(d) & (e).  ADAAG section 4.19.4 provides that "[h]ot water and drain pipes under lavatories shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories."  ADAAG § 4.19.4.  Section 4.16.5 provides that "[f]lush controls shall be hand operated or automatic and shall comply with 4.27.4. Controls for flush valves shall be mounted on the wide side of toilet areas no more than 44 in (1120 mm) above the floor."  ADAAG § 4.16.5.  Again, Plaintiffs have provided no support, other than their bare allegations, to rebut Defendant's expert

testimony that the restroom has been made ADA compliant.  Norkunas Aff. ¶ 7;

Norkunas Report at 10; see Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.

2000) ("This court has consistently held that conclusory allegations without specific

supporting facts have no probative value." (citations and quotations omitted)).

Plaintiffs' expert also failed to discuss this issue in his expert report.  See Lowell Report.

Accordingly, summary judgment will be granted to Defendant on both these claims.

        Sixth, Plaintiffs complain  that the restroom door has improper hardware for

disabled persons in violation of section 4.13.9 of the ADAAG.  Complaint ¶¶ 10(f) & (i).

Defendant's expert has represented that an automatic door opening device has been

added to the restroom door.  Norkunas Report at 9.  Plaintiffs concede that Defendant

has installed an automatic restroom door opener and that this installation is a

permanent modification to the facility.  Plaintiffs' Reply ¶ 5.  Accordingly, summary

judgment will be granted to Defendant on the basis that this claim is moot.  See Nat'l

Alliance for Accessibility, Inc., 2011 WL 5975809, at *3.

        Seventh, Plaintiffs contend that the mirrors in the facility fail to meet the

requirements of ADAAG section 4.19.6.  Complaint ¶ 10(g).  Section 4.19.6 provides

that "[m]irrors shall be mounted with the bottom edge of the reflecting surface no higher

than 40 in (1015 mm) above the finish floor."  ADAAG § 4.19.6.  Plaintiffs have not

provided any factual support, other than conclusory allegations, that the mirrors in

Defendant's restroom are improperly mounted.  The testimony of Defendant's expert

that the restroom is ADA compliant is unrebutted, even by Plaintiffs' expert.  Norkunas

Report at 9; Lowell Report.  Thus, because Plaintiffs have failed to demonstrate a

disputed issue of material fact, summary judgment will be granted for Defendant on this

claim.

Finally, Plaintiffs allege that the gas station lacks plumbing features suitable for disabled persons in violation of section 4.19.5 of the ADAAG.  Complaint ¶ 10(h). Section 4.19.5 provides that "[f]aucets shall comply with 4.27.4. Lever-operated, push-type, and electronically controlled mechanisms are examples of acceptable designs.  If self-closing valves are used the faucet shall remain open for at least 10 seconds."  ADAAG § 4.19.5.  Defendant's expert states that the restroom has "push-type" faucets which comply with the ADAAG.  Norkunas Aff. ¶ 9.  Additionally, the faucet has been adjusted to stay open for 10 seconds, even though this issue is not properly before the Court.  Id.; Franco Aff. ¶ 7; Houston Aff. ¶ 6.  Thus, summary judgment will be granted on this issue because Plaintiffs have failed to demonstrate a disputed issue of material fact.

## III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Summary Judgment [DE 19] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [DE 21] is **GRANTED in part and DENIED in part**.  Summary judgment is granted for Defendant on all Plaintiffs' claims except the claims regarding the cross slopes of the entrance ramp and access aisle detailed in paragraph 10(a) of the Complaint.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of January, 2012.

JAMES I. COHN
United States District Judge

Copies to counsel of record via CM/ECF.